IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| MOHAMMAD & ARSHIA UDDIN | : | |
| | : | |
| Plaintiffs, | : | CIVIL ACTION |
| | : | NO. 06-5275 |
| v. | : | |
| | : | |
| EMILIO GONZALEZ, DIR., BUREAU of CITIZENSHIP & IMMIGR. SERV., et al. | : | |
| | : | |
| Defendants. | : | |

January _20__, 2010                                                                 Anita B. Brody, J.

## MEMORANDUM

### I. INTRODUCTION

Plaintiffs, Mohammad Uddin and Arshia Uddin, husband and wife, have filed suit against Defendants Emilio Gonzalez, Director of the United States Citizenship and Immigration Services (USCIS), the unnamed Director of the Administrative Appeals Office (AAO) of USCIS, and Karen Fitzgerald, Director of the Philadelphia Office of USCIS (collectively, "the Government").[1] The Uddins seek a declaration that the Government has violated a series of constitutional and statutory laws in its handling of their applications for Lawful Permanent Residence status; and an order from this Court that their removal proceedings be canceled, their applications approved, and damages assessed for harms allegedly suffered by the Uddins. The Government moves to dismiss the Uddins' claims for lack of subject matter jurisdiction, on

---

[1] The unnamed Director of the AAO and Karen Fitzgerald have been substituted for Robert Weimann, former Director of the AAO, and Donald Monica, former Director of the Philadelphia Office of USCIS, respectively, pursuant to Fed. R. Civ. P. 25(d) and Plaintiffs' Amended Complaint. *See infra* note 2.

1

mootness grounds, and for failure to state a claim upon which relief may be granted; or in the alternative, the Government moves for summary judgment. In their Response brief, the Uddins have requested that I deny the Motion to Dismiss and allow them to file an Amended Complaint.[2] For the following reasons, the Government's Motion to Dismiss is granted.[3]

## II. LEGAL STANDARDS

   A. Rule 12(b)(1)

Federal courts have limited jurisdiction and as a result, "[i]f the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action." Fed. R. Civ. P. 12(h)(3). The burden is on the plaintiff to prove the existence of jurisdiction. *Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977). "Challenges to subject matter jurisdiction under Rule 12(b)(1) may be 'facial' or 'factual.' Facial attacks, like this one, contest the sufficiency of the pleadings, and the trial court must accept the complaint's allegations as true." *Turicentro, S.A. v. Am. Airlines Inc.*, 303 F.3d 293, 300 n.4 (3d Cir. 2002). "Only if it

---

[2] Fed. R. Civ. P. 15(a) affords a party the right to amend his or her pleadings once as a matter of course at any time before a responsive pleading is served. *Id*. A motion to dismiss is not considered a responsive pleading. *Centifanti v. Nix,* 865 F.2d 1422, 1431 n.9 (3d Cir. 1989). Because this is the Uddins' first request to amend their pleading, and the Government has yet to file an answer, I shall grant the Uddins' Motion and accept the attached Amended Complaint.

However, defendants "'are not required to file a new motion to dismiss simply because an amended pleading was introduced while their motion was pending. If some of the defects raised in the original motion remain in the new pleading, the court simply may consider the motion as being addressed to the amended pleading.'" *Jordan v. City of Philadelphia*, 66 F. Supp. 2d 638, 641 n.1 (E.D. Pa. 1999) (quoting 6 Charles A. Wright, Arthur R. Miller, and Mary Kay Kane, *Federal Practice and Procedure* § 1476 (2d ed. 1990)). Because Counts I through IV of the Amended Complaint suffer from the same deficiencies that are addressed in the Government's Motion to Dismiss, I will consider the Government's Motion to be addressing the Amended Complaint. *See id*.

[3] The Government's (alternative) Motion for Summary Judgment is denied as moot.

appears to a certainty that the pleader will not be able to assert a colorable claim of subject matter jurisdiction may the complaint be dismissed." *Halstead v. Motorcycle Safety Found. Inc.*, 71 F. Supp. 2d 464, 468 (E.D. Pa. 1999).

    B. Rule 12(b)(6)

In deciding a motion to dismiss under Fed. R. Civ. P. 12(b)(6), a court must "accept all factual allegations as true [and] construe the complaint in the light most favorable to the plaintiff." *Pinker v. Roche Holdings Ltd.*, 292 F.3d 361, 374 n.7 (3d Cir. 2002). A motion to dismiss should be granted under Rule 12(b)(6) if the moving party has established that the plaintiff would not be entitled to relief under any reasonable reading of the complaint. *Brown v. Card Serv. Ctr.*, 464 F.3d 450, 452 (3d Cir. 2006).

### III. FACTUAL BACKGROUND[4]

Mohammad Uddin, a native of Pakistan, entered the United States without inspection in 1984. Just prior to leaving Pakistan, Mr. Uddin earned a Bachelor's (1982) and Master's (1984) Degree in Geography from the University of Karachi. Within the year after his arrival in the United States, Mr. Uddin found employment with Jembro Stores, Inc., as a retail store manager. He remained at that position throughout the relevant time period at issue in this case. On December 29, 1987, despite having never worked as a farmworker in the United States, Mr. Uddin applied for benefits under the Special Agricultural Worker (SAW) amnesty program, established by Congress in the Immigration Reform and Control Act (IRCA) of 1986, *see* 8 U.S.C. § 1160, to provide alien farmworkers with lawful temporary residence status and

---

[4] Unless otherwise indicated, all facts are taken from the Uddins' Amended Complaint and the exhibits attached to it, in the light most favorable to them.

eventually lawful permanent residence. *McNary v. Haitian Refugee Ctr., Inc.*, 498 U.S. 479, 483 (1991). As a result of his SAW application, Mr. Uddin was issued three I-688A employment authorization cards, one on the day of his application, one on November 2, 1988, and the last on October 3, 1990. On April 13, 1990, his application was denied. On May 18, 1990, Mr. Uddin appealed the decision but later decided against pursuing the appeal.

Between June 1988 and March 1991, Mr. Uddin traveled abroad, primarily to Pakistan, three times. Each time he returned, he was permitted to reenter after showing immigration authorities his I-688A employment authorization cards and his Pakistani passport. His last reentry into the United States occurred on March 30, 1991 at New York's John F. Kennedy International Airport.[5]

**IV. PROCEDURAL HISTORY**

The following limited procedural history regarding Mr. Uddin's travails through the U.S. immigration process can be cobbled together from the filings attached to the Uddins' Amended Complaint. On December 3, 1996, Mr. Uddin was taken into custody by U.S. immigration authorities, issued an Order to Show Cause, and told to await notice of a hearing date. Mr. Uddin never received the notice and an Order of Deportation in absentia was entered on May 13, 1997. Mr. Uddin appealed the decision. Although it is unclear what transpired in the interim, by the spring of 2001, Mr. Uddin was in removal proceedings before an Immigration Judge (IJ). On April 9, 2001, the removal proceedings were terminated by the IJ with the consent of the parties in order to permit Mr. Uddin to submit an I-485 application for an adjustment of status to

---

[5] According to the Government, Mrs. Uddin followed her husband to the United States on April 7, 1991 and was admitted into the country as a B-2 nonimmigrant visitor for a period of six months. The Uddins provide no evidence to the contrary.

permanent residency pursuant to § 245 of the Immigration and Nationality Act (INA). 8 U.S.C. § 1255(a).[6] Later in 2001, Mrs. Uddin also submitted an I-485 application dependent on and derived from Mr. Uddin's application. USCIS officials did not interview the Uddins with regard to their I-485 applications until March 14, 2005. During the interview, Mr. Uddin was asked to explain the discrepancy between his assertion that he had only ever worked for Jembro Stores, Inc. since his arrival in the U.S. in 1984, and his application for and receipt of benefits under the SAW program; such benefits were only available to those who had performed at least 90 days of agricultural work in the U.S. from 1984 to 1986. Ultimately, USCIS was not satisfied with Mr. Uddin's response, and on August 29, 2005 it declared him ineligible for an adjustment of status pursuant to INA § 212(a)(6)(C)(i), *see* 8 U.S.C. §1182(a)(6)(C)(i), after determining that he had fraudulently obtained immigration benefits under the SAW program.

On September 27, 2005, Mr. Uddin filed with USCIS a Motion to Reconsider the denial of his adjustment application. No action having been taken on his Motion, the Uddins then filed this suit on December 1, 2006. Soon afterward, on January 23, 2007, the parties informed this Court that the Government had agreed to review Mr. Uddin's Motion to Reconsider and re-open his adjustment application as well as Mrs. Uddin's adjustment application. By order of this Court, this case was stayed pending the outcome of the Government's review. Then, in rapid

---

[6] 8 U.S.C. § 1255(a)(1) provides:

The status of an alien . . . may be adjusted by the Attorney General, in his discretion and under such regulations as he may prescribe, to that of an alien lawfully admitted for permanent residence if (1) the alien makes an application for such adjustment, (2) the alien is eligible to receive an immigrant visa and is admissible to the United States for permanent residence, and (3) an immigrant visa is immediately available to him at the time his application is filed.

succession, USCIS issued a Notice of Intent to Deny (February 15, 2007), Mr. Uddin filed his timely response (March 19, 2007), and his application was denied again (June 8, 2007).[7]

On September 6, 2007, the Government initiated removal proceedings against the Uddins and served a Notice to Appear to both. Their case is now pending before an Immigration Judge.

## V. DISCUSSION

The Uddins' scattershot grievances can be summarized as follows:

(1) the Government failed to process their Motions to Reconsider in violation of 8 C.F.R. § 103.5, which states that "when the affected party files a motion, the official having jurisdiction may, for proper cause shown, reopen the proceeding or reconsider the prior decision." *Id*.

(2) the Government's inaction from September 27, 2005 to February 15, 2007 regarding the Uddins' Motions to Reconsider constituted an arbitrary constructive denial of the Uddins' adjustment applications in violation of the Administrative Procedures Act (APA), 5 U.S.C. § 706(2)(A), (B) & (D);[8] an act "unreasonably delayed" in violation of 5 U.S.C. § 706(1); and a failure to exercise discretion in violation of the Uddins' due process rights.

(3) both of the Government's denials of Mr. Uddin's adjustment application violated 5 U.S.C. § 706(2)(A), (B) & (D) and his right to due process because

---

[7] Mrs. Uddin's adjustment application was also denied as her application was dependent on and derived from her husband's application.

[8] 5 U.S.C. § 706 provides in relevant part:

To the extent necessary to decision and when presented, the reviewing court shall . . .

    (1) compel agency action unlawfully withheld or unreasonably delayed; and

    (2) hold unlawful and set aside agency action, findings, and conclusions found to be--

        (A) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law;
        (B) contrary to constitutional right, power, privilege, or immunity;
        (C) in excess of statutory jurisdiction, authority, or limitations, or short of statutory right;
        (D) without observance of procedure required by law.

both denials incorporated information related to Mr. Uddin's 1987 application for SAW program benefits in violation of pertinent confidentiality provisions.

(4) the Uddins' were harmed by the denial of their due process rights and seek damages as crime victims from the government officials responsible for handling their immigration matters.

The Government argues that it has rendered Grievances #1 and #2 moot by reopening, reinvestigating, and eventually denying the Uddins' adjustment applications. The Government also contends that I lack subject matter jurisdiction over Grievance #3 due to the "jurisdiction stripping" provision in the INA that divests courts of jurisdiction to "review (i) any judgment regarding the granting of [adjustment of status] relief," 8 U.S.C. § 1252(a)(2)(B)(i); as well as section 242(g) of the INA, which states that "no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any alien under this chapter." 8 U.S.C. § 1252(g). The Government contends that I lack jurisdiction over Grievance #4 because the Uddins' have failed to exhaust their appellate rights. Finally, the Government argues that even if I find that I have jurisdiction over the Uddins' claims, they should be dismissed for failing to state claims upon which relief may be granted. Although I do not agree with the Government's reasoning in each instance, it is ultimately correct that each of the Uddins' grievances should be dismissed.

A. Grievance #1: Failure to Process

The Uddins' first grievance that the Government has failed to process their Motions to Reconsider appears to be a vestige of their original complaint that should have been eliminated when they crafted their Amended Complaint. There is no doubt that the Government did

evaluate the Uddins' Motions.  (*See* Am. Compl., Ex. #12 (letter dated February 15, 2007, in which USCIS District Director Donald Monica acknowledges Mr. Uddin's Motion to Reconsider, denies it, and then notifies Mr. Uddin of the Government's intent to reopen his adjustment application); and Am. Compl., Ex. #14 (letter dated June 8, 2007, in which USCIS Field Office Director Evangelia Klapakis notifies Mr. Uddin that his application for adjustment of status has been denied again).)  This renders the Uddins' first grievance moot.  *See Blanciak v. Allegheny Ludlum Corp.*, 77 F.3d 690, 698-99 (3d Cir. 1996) ("If developments occur during the course of adjudication that . . . prevent a court from being able to grant the requested relief, the case must be dismissed as moot.").

      B.  Grievance #2:  Inaction as Failure of Discretion

The Uddins seek a court declaration that the Government's approximately seventeen month delay in adjudicating their applications constituted "agency action unlawfully withheld or unreasonably delayed."  5 U.S.C. § 706(1).  They consider the delay to have been a constructive denial of their applications and ask this Court to declare such a denial as "arbitrary, capricious, . . . not in accordance with law; contrary to constitutional right, power, privilege, or immunity; . . . [and] without observance of procedure required by law."  5 U.S.C. § 706(2)(A), (B) & (D).  Furthermore, the Uddins argue that the Government's delay constituted a failure to exercise discretion and violated their rights, presumably under the Fifth Amendment, to due process.  The Uddins request that I declare that the Government has committed such violations, declare their adjustment applications approved, and award monetary damages.

Despite the Government's contentions, this Court does have subject matter jurisdiction regarding these particular claims under 28 U.S.C. § 1331 because the Uddins allege a cause of

8

action under the APA,[9] which authorizes a court to compel agency action "unlawfully withheld or unreasonably delayed." 5 U.S.C. § 706(1). These claims relate to the alleged harm suffered by the Uddins due to the Government's inaction prior to its reopening of the Uddins' adjustment applications. Consequently, the jurisdiction stripping provisions of the INA, 8 U.S.C. § 1252(a)(2)(B)(i) and 8 U.S.C. § 1252(g) are inapplicable. *See Cao v. Upchurch*, 496 F. Supp. 2d 569, 572-74 (E.D. Pa. 2007) (concluding that district court review of government's delay in adjudicating an adjustment of status application is not precluded by 1) Section 1252(a)(2)(B)(i) because delay does not constitute judgment; 2) Section 1252(a)(2)(B)(ii) because the INA does not provide the Attorney General discretion to let such an application "languish indefinitely"; or 3) Section 1252(g) because that section only applies to "cases in which a litigant seeks review of a removal decision").

However, the Government is correct that the Uddins' delay claims are meritless and should be dismissed for failing to state a claim upon which relief can be granted. First, the Uddins supply no evidence to support a declaration that the Government's failure to act over the course of seventeen months after they submitted their Motions to Reconsider constituted unreasonable delay. In contrast, the Supreme Court has specifically held that a delay of eighteen months is not considered "unwarranted." *INS v. Miranda*, 459 U.S. 14, 18 (1982) (per curiam); *see also DiPeppe v. Quarantillo*, 337 F.3d 326, 335 n.18 (3d Cir. 2003) (citing *Miranda*).

Second, the Government's alleged delay did not constitute constructive denial of the

---

[9] The APA permits suits by "[a] person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute." 5 U.S.C. § 702. However, "the APA does not provide an independent jurisdictional basis; rather, jurisdiction over an APA claim arises under the federal question statute, 28 U.S.C. § 1331." *Assadzadeh v. Mueller*, No. 07-2676, 2007 WL 3252771, at *4 n.1 (E.D. Pa. Oct. 31, 2007).

Uddins' applications for adjustment. As the Supreme Court has stated clearly, "[a] 'failure to act' is not the same thing as a 'denial.' The latter is the agency's act of saying no to a request; the former is simply the omission of an action without formally rejecting a request." *Norton v. S. Utah Wilderness Alliance*, 542 U.S. 55, 63 (2004).

Third, I have no authority to order the Government to approve the Uddins' adjustment applications. Section 245 of the INA declares that "[t]he status of an alien . . . may be adjusted by the Attorney General in his discretion." 8 U.S.C. § 1255(a)(1). Thus, "[a]djustment of status is . . . a matter of administrative grace, not mere statutory eligibility." *Ameeriar v. INS*, 438 F.2d 1028, 1030 (3d Cir. 1971). While 5 U.S.C. § 706(1) does authorize courts to "compel agency action . . . unreasonably delayed," *id.*, it "empowers a court only to compel an agency 'to perform a ministerial or non-discretionary act,' or 'to take action upon a matter, without directing *how* it shall act.'" *S. Utah Wilderness Alliance*, 542 U.S. at 64 (quoting Attorney General's Manual on the Administrative Procedure Act 108 (1947)). Thus, because the Attorney General has discretion as to whether he approves an adjustment application, I have no authority to compel him to approve the Uddins' applications.

Finally, the Uddins' argument that the Government's delay constituted a failure to exercise discretion in violation of their due process rights is equally baseless. As the Third Circuit explained in *Mudric v. Att'y Gen.*, 469 F.3d 94 (3d Cir. 2006):

> Given the discretionary nature of immigration benefits, . . . [a] delay-as-due process violation claim must fail at the threshold. It is axiomatic that a cognizable liberty or property interest must exist in the first instance for a procedural due process claim to lie. . . .
>
> [T]he various discretionary privileges and benefits conferred on aliens by our federal immigration laws do not vest in aliens a constitutional right to have

their immigration matters adjudicated in the most expeditious manner possible. . . .

[N]o federal statute or regulation prescribes a hard-and-fast deadline for acting upon immigration applications and petitions . . . submitted to the various agencies that administer our immigration laws.

*Id*. at 98-99 (internal citations omitted). No constitutional injury resulted from the alleged delays in this case because the Uddins "simply ha[ve] no due process entitlement to the wholly discretionary benefits of which [they] were allegedly deprived, much less a constitutional right to have them doled out as quickly as [they] desired." *Id*.

Consequently, the Uddins' claims regarding the Government's delay are dismissed.

C. Grievance #3: Use of Information from SAW Application

The Uddins' most substantial claim is that the Government improperly used information furnished pursuant to Mr. Uddin's SAW application as grounds for denying his adjustment of status application. The Immigration Reform and Control Act of 1986 (IRCA), "allows aliens who are in the United States illegally to apply for legalization of their immigration status either as temporary agricultural workers, 8 U.S.C. § 1160, or, providing they resided continuously in the country since 1982, as permanent residents, 8 U.S.C. § 1255a." *United States v. Hernandez*, 913 F.2d 1506, 1510 (10th Cir. 1990). Both sections included confidentiality provisions meant to ensure that "people who wish to file for legalization will not be deterred from doing so by the prospect of attracting a troop of [immigration] officers bent on deportation to their doors." *Arreola-Arellano v. INS*, 223 F.3d 653, 655 (7th Cir. 2000). For example, 8 U.S.C. § 1160(b)(6)(A)(i) ("Confidentiality of Information") states:

Except as provided in this paragraph, neither the Attorney General, nor any other official or employee of the Department of Justice, or bureau or agency thereof, may–

> (i) use the information furnished by the applicant pursuant to an application filed under this section for any purpose other than to make a determination on the application . . . or for enforcement.

*Id*. Section 1255a(5) has equivalent language. The Uddins argue that USCIS violated the confidentiality provision in 8 U.S.C. § 1160(b)(6)(A)(i) by using information related to Mr. Uddins' SAW application in adjudicating Mr. Uddin's application under Section 1255(a).

The Government contends that I may not examine the confidentiality issue because I lack jurisdiction to review the agency's denial of Mr. Uddin's adjustment application under the INA's jurisdiction-stripping provision, 8 U.S.C. § 1252(a)(2)(B)(i). The government is correct in stating that, "[a]s 8 U.S.C. § 1252(a)(2)(B)(i) makes clear, courts have no jurisdiction to review USCIS's ultimate decision to grant or deny an adjustment of status application." *Orlov v. Howard*, 523 F. Supp. 2d 30, 33 (D.D.C. 2007). However, the Third Circuit has been careful to distinguish "between a denial of an application to adjust status, and a determination that an immigrant is legally ineligible for adjustment of status." *Pinho v. Gonzales*, 432 F.3d 193, 203 (3d Cir. 2005). A court may not review a denial of an application to adjust status because that is "within the discretion of the agency. But the immigrant's eligibility itself is determined by statute." *Id*. Therefore, "[d]etermination of *eligibility* for adjustment of status–unlike the *granting* of adjustment itself–is a purely legal question and does not implicate agency discretion." *Id*. at 204.

The Government admits that its denial of Mr. Uddin's adjustment application was based in part on a finding that he was ineligible for adjustment under 8 U.S.C. § 1182(a)(6)(C)(i) (fraud or willful misrepresentation) due to its determination that he had attempted to fraudulently procure SAW program benefits. However, the Government also contends that Mr. Uddin's

12

application was denied separately and independently on discretionary grounds. USCIS engaged in a balancing of positive and negative factors before ultimately deciding that the weight of the adverse factors precluded a favorable exercise of discretion. The positive factors included the fact that Mr. Uddin has four United States citizen children and the fact that he had resided in the United States for over two decades. The negative factors included Mr. Uddin's initial unlawful entry, his unlawful employment, the USCIS's determination that he was attempting to establish eligibility by fraud, and his "lack of forthrightness" in his adjustment proceedings regarding his SAW application. The last two factors were labeled "serious" and "significant," respectively. Several appellate courts have noted that they "retain jurisdiction over denials of adjustment of status applications even when the denial is based in part on a matter of discretion when the discretionary determination is based on the same grounds as the eligibility determination." *See Yang v. Mukasey*, 514 F.3d 278, 279 (2d Cir. 2008); *see also Liu v. Att'y Gen.*, 283 F. App'x 910, 912 (3d Cir. 2008) (citing *Yang v. Mukasey*); *Hernandez v. Ashcroft*, 345 F.3d 824, 845-47 (9th Cir. 2003). In this case, two of the most significant adverse factors weighing against Mr. Uddin, fraud and lack of forthrightness, were based on the issues related to Mr. Uddin's SAW application, which provided the foundation for the finding that he was ineligible. Whether or not that overlap allows me to retain jurisdiction is a difficult question that I do not need to answer because the Uddins have not exhausted their administrative remedies.

As the Third Circuit has noted, "[t]o support APA jurisdiction, the agency action must be final." *Pinho*, 432 F.3d at 200. "Finality requires exhaustion of administrative remedies. If there remain steps that the immigrant can take to have action reviewed within the agency, then the action is not final and judicial review is premature." *Id.* In *Pinho*, judicial review of the

13

petitioner's eligibility for adjustment of status was not premature because he had not been placed in removal proceedings. In the absence of removal proceedings, there were "no further procedures that Pinho could invoke to have his claim of statutory eligibility heard." *Id*. However, the court recognized that had Pinho been placed in removal proceedings, judicial review would have been barred because "applications for adjustment of status can be renewed . . . during deportation proceedings." *Id*. at 201 (citing *Howell v. INS*, 72 F.3d 288, 293 (2d Cir. 1995), for the proposition that jurisdiction is lacking once deportation proceedings have begun).

In this case, it is undisputed that the Uddins have been placed in removal proceedings. On September 6, 2007, the Uddins were issued Notices to Appear in removal proceedings before an immigration judge (IJ).[10] The Uddins may renew their adjustment applications for de novo consideration before the IJ in the removal proceedings. *See* 8 C.F.R. § 245.2(a)(5)(ii); *Pinho*, 432 F.3d at 200-01. They may appeal any adverse decisions made by the IJ to the Board of Immigration Appeals and then to the appropriate federal court of appeals. *See Gadria v. Gantner*, No. 05 Civ. 6621(NRB), 2008 WL 650369, at *3 (S.D.N.Y. Mar. 6, 2008). Thus, it cannot be said that final agency action has been taken in this case and therefore judicial review of USCIS's denial of the Uddins' applications for adjustment of status is premature.

---

[10] The Uddins seek a declaration that the Government improperly initiated removal proceedings against them in violation of the INA, APA, and their Due Process rights. However, Section 242(g) of the INA clearly states that "no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to *commence proceedings*, adjudicate cases, or execute removal orders against any alien under this chapter." 8 U.S.C. § 1252(g) (emphasis added); *see also Reno v. Am.-Arab Discrimination Comm.*, 525 U.S. 471, 482 (1999) ("Th[is] provision applies only to three discrete actions [in the deportation process] that the Attorney General may take: her 'decision or action' to '*commence* proceedings, *adjudicate* cases, or *execute* removal orders.'")).

D. Grievance #4: Bivens Action

Finally, the Uddins request damages for the Government's alleged violations of their Due Process rights under *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388 (1971) and 42 U.S.C. § 1983. They also claim that they qualify as crime victims under 42 U.S.C. § 10607(e)(2) and therefore deserve restitution under 42 U.S.C. § 10607(b)(6). First, the Uddins simply have no Section 1983 claims because such claims may only be directed against state officials, *see Lora-Pena v. FBI*, 529 F.3d 503, 504 n.1 (3d Cir. 2008), whereas all three defendants in this case are federal officials. Second, I lack subject matter jurisdiction over the Uddins' *Bivens* claims because they have brought suit against the three defendants only in their official capacities. It is black letter law that a *Bivens* action cannot be maintained against a federal government official in his or her official capacity. *See Consejo de Desarrollo Economico de Mexicali, A.C. v. United States*, 482 F.3d 1157, 1173 (9th Cir. 2007).

Even if the Uddins had properly filed a *Bivens* action against the defendants in their personal capacity, I would not have jurisdiction over it because the Uddins have failed to exhaust their administrative remedies. To assert a *Bivens* action, a plaintiff must allege that a federal official in his individual capacity "violated the plaintiff's rights under color of federal law." *Brown v. Philip Morris, Inc.*, 250 F.3d 789, 800 (3d Cir. 2001). The Uddins claim that their due process rights were violated primarily by the Government's delay in considering their Motions to Reconsider their applications for adjustment of status, and the Government's alleged breach of statutory confidentiality provisions in its use of information related to Mr. Uddin's application for SAW program benefits. I have already discussed and dismissed the Uddins' delay claims. *See supra* Part V.B. As for their breach of confidentiality claims, "an alien must exhaust his

15

claims before the BIA, even if it pertains to his right to due process, if the alleged error implicates agency expertise and the agency is capable of granting a remedy." *Susanto v. Att'y Gen.*, 235 F. App'x 890, 892 (3d Cir. 2007) (citing *Bonhometre v. Gonzales*, 414 F.3d 442, 447 (3d Cir. 2005)). In this instance, as discussed previously, the Uddins will have the opportunity to renew their applications for adjustment of status before the IJ. Consequently, allowing the Uddins to amend their complaint a second time to assert a proper *Bivens* claim would be futile.

The Uddins' claim for restitution under the Victims of Crime Act, 42 U.S.C. § 10606, also fails. The Uddins contend that 8 U.S.C. § 1160(b)(6)(D) provides a criminal penalty punishable by a fine up to $10,000 for improper use of information connected with an alien's application for SAW program benefits. They believe they are entitled to restitution in the amount of at least $10,000 per violation of 8 U.S.C. § 1160(b)(6). Although a crime victim does have the right to restitution under 42 U.S.C. § 10606(b)(6), there is absolutely "nothing in the Victims of Crime Act which would indicate that the right to restitution . . . refers to anything other than the right to a restitution order in the context of sentencing a convicted criminal." *Daugherty v. United States*, 212 F. Supp. 2d 1279, 1317 (N.D. Okla. 2002). The Uddins have alleged that they have made requests to the United States Attorney's Office that it investigate this matter, but there is "no allegation that there is an ongoing or contemplated criminal prosecution against any defendant" in this case. *Id*. Consequently, to the extent that the Uddins could even succeed on such a claim, their allegations are not ripe and shall be dismissed.

## VI. CONCLUSION

For the reasons enumerated above, the Uddins' Motion to File an Amended Complaint is granted; however, because I grant the Government's Motion to Dismiss and consider it to address

the Amended Complaint as well as the original Complaint, the Uddins' Amended Complaint is dismissed.

s/Anita B. Brody

_____

ANITA B. BRODY, J.
